

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00369-CV

**IN THE INTEREST OF L.L.B.**, J.A.B., J.A.B., A.J.B., and B.B.L., Children

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2020PA01007
Honorable Linda A. Rodriguez, Judge Presiding

Opinion by:      Beth Watkins, Justice

Sitting:          Patricia O. Alvarez, Justice
                 Luz Elena D. Chapa, Justice
                 Beth Watkins, Justice

Delivered and Filed: February 16, 2022

AFFIRMED

J.B. and A.L. appeal the trial court's order terminating their parental rights to their five

children, L.L.B. (born 2009), J.A.B. (born 2012), J.A.B. (born 2015), A.J.B. (born 2018), and

B.B.L. (born 2020).[1] We affirm the trial court's order.

### BACKGROUND

On May 19, 2020, the Texas Department of Family and Protective Services removed the

children from J.B. and A.L.'s care[2] primarily because of its concerns about domestic violence in

the home. The Department obtained temporary managing conservatorship over the children, placed

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and their biological parents. TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

[2] B.B.L. was not yet born when the Department removed the older four children from the care of J.B. and A.L. The Department removed B.B.L. from their care shortly after her birth in July of 2020.

them with their maternal grandparents, and filed a petition to terminate J.B.'s and A.L.'s parental rights. The Department created family service plans for J.B. and A.L., setting out conditions for reunification including: psychological evaluation and participation in individual counseling; completion of a drug assessment, engagement in any requested drug treatment, and submission to random drug testing; completion of parenting and domestic violence classes; and demonstration of stable housing and employment. The Department ultimately pursued termination of J.B. and A.L's parental rights.

In June of 2021, the trial court held a two-day bench trial over Zoom at which J.B. and A.L. appeared. The trial court heard testimony from five witnesses: (1) the Department's investigator; (2) the Department's caseworker; (3) the children's grandmother; (4) J.B.; and (5) A.L. At the conclusion of trial, the court signed an order terminating J.B's parental rights pursuant to section 161.001(b)(1)(D), (E), (N), (O), and (P), A.L's parental rights pursuant to section 161.001(b)(1)(D) and (O), and its finding that termination of J.B. and A.L.'s parental rights was in the best interest of the children. J.B. and A.L. appealed.

## ANALYSIS

### *Jurisdiction*

In his first issue, J.B. argues the order of termination is void because the trial court did not properly extend its jurisdiction pursuant to section 263.401(b) of the Family Code.

### *Standard of Review and Applicable Law*

Texas Family Code section 263.401 encourages prompt resolution of suits in which the Department requests termination of the parent-child relationship or requests that the Department be named conservator of a child. TEX. FAM. CODE ANN. § 263.401. Section 263.401 does this by requiring courts to commence the trial on the merits within, essentially, one year after the initial temporary order. *See In re G.X.H.*, 627 S.W.3d 288, 292 (Tex. 2021). In extraordinary

circumstances, trial courts may extend that one-year dismissal date. *See id*. "But if the trial court neither commences trial by the dismissal date nor extends it in accordance with section 263.401(b), the statute dictates a dire consequence: the trial court's jurisdiction over the suit 'is terminated and the suit is automatically dismissed.'" *Id*. (quoting TEX. FAM. CODE § 263.401(a)).

"Whether a trial court has subject matter jurisdiction is a question of law which we review de novo." *In re J.K.B.*, No. 04-20-00261-CV, 2021 WL 2942447, at *3 (Tex. App.—San Antonio July 4, 2021, no pet.) (mem. op.); *see also In re E.O.*, No. 01-20-00212-CV, 2020 WL 4458897, at *4 (Tex. App.—Houston [1st Dist.] Aug. 4, 2020, no pet.) (mem. op.).

*Application*

Here, the trial court rendered its order appointing the Department temporary managing conservator of the oldest four children on May 19, 2020. Calculated as the statute requires, the first anniversary of that date was May 24, 2021. Therefore, unless the trial court either commenced the trial on the merits, or granted an extension under Subsection (b), the court's jurisdiction over the case would terminate and the suit would be automatically dismissed without a court order on May 24, 2021. *See* TEX. FAM. CODE § 263.401(a). Here, trial commenced June 18, 2021, so the trial court retained jurisdiction to render a final order only if it granted an extension under subsection (b). It did.

The trial court held a hearing on April 21, 2021. The docket entries for that day include "JUDGES DOCKET NOTES" providing:

| 04/21/2021 | HEARING/TRIAL CRT REPORTER ASSIGNED<br>*AJ ANGIE JIMENEZ, 307TH COURT RPRTR* |
|---|---|
| 04/21/2021 | JUDGES DOCKET NOTES (Judicial Officer: GARCIA, RICHARD ) |

The notes themselves are file stamped on the same date and include a notation extending the dismissal date until "11/20/21". When trial on the merits started on June 18, 2021, the court and the parties discussed that extension:

```
        THE COURT:  Am I correct in my information that the
dismissal date is sometime next week?
        MS. HOWARD:  Your Honor, actually, this case has been
extended to the 18-month mark.
        THE COURT:  Okay.
        MS. HOWARD:  The current dismissal date I see is
November 20th of 2021.
        THE COURT:  Okay.  I have been furnished with Judge
Garcia's notes, but I always have a bit of a problem reading them.
But I do see that on here now.
    Thank you.
```

Section 101.026 of the Family Code "permits trial courts to render orders orally in the presence of the court reporter or in writing on its docket sheet or by a separate written instrument." *In re G.X.H.*, 627 S.W.3d at 299; TEX. FAM. CODE ANN. § 101.026. Here, the trial court extended the dismissal date in accordance with section 263.401(b) and thus remained vested with jurisdiction over the suit when it entered the order of termination. *See In re R.J.R.*, No. 04-21-00246-CV, 2021 WL 5813827, at *2 (Tex. App.—San Antonio Dec. 8, 2021, no pet. h.) (mem. op.); *In re P.Z.F*, ___ S.W.3d ___, 2021 WL 3941667, at *3 (Tex. App.—Dallas Sept. 2, 2021, no pet.).

We overrule J.B.'s first issue.

### *Termination*

In J.B.'s second issue and A.L.'s sole issue, they argue legally and factually insufficient evidence supports the trial court's finding that termination of their parental rights was in the children's best interest.

### *Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate J.B's and A.L.'s parental rights and that termination was in the best interest of the children. TEX. FAM. CODE ANN. § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). In reviewing the legal sufficiency of the evidence to support the trial court's findings, we look "'at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d at 266). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* "'If, in

light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.'" *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). The factfinder is the sole judge of the weight and credibility of the evidence. *Id.* at 346.

*Applicable Law*

There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d 92, 97 (Tex. App.—San Antonio 2017, no pet.). To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[3] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment and the Texas Supreme Court has used a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

---

[3] These factors are: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371–72.

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at \*5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at \*3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may judge a parent's future conduct by his past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

*Application-J.B.*

J.B. and A.L. came to the attention of the Department because of concerns about domestic violence. The Department presented evidence that J.B. and A.L. had fought, in front of the children, for years. *See In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.) (considering evidence that children had been exposed to domestic violence); *Holley*, 544 S.W.2d at 371–72 (the emotional and physical danger to the child now and in the future; the stability of the home or proposed placement; the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one). J.B. had also admitted to drug use, and this history of drug use and violence went back to "2015, 2016." *See In re M.R.*, 243 S.W.3d at 820 (considering evidence that children had been exposed to parent's drug use); *see also* Tex. Fam. Code § 263.307(b)(3), (7), (8), (12)(D). J.B. and A.L. did not cooperate with the Department's attempts to contact them. At the time of removal, J.B. was arrested on an outstanding warrant.

The caseworker testified that J.B. completed much of his service plan, including the family violence prevention program, but he continued to act aggressively toward the maternal grandparents, a therapist, and much of the Department's staff, including the caseworker herself.

The CASA volunteer even requested to be removed from the case due to the "threatening and aggressive behavior" of J.B. TEX. FAM. CODE § 263.307(b)(10), (11).

At the time of trial, J.B. was subject to a no-contact order with the current caregivers, the grandparents. J.B. tested positive for drugs just two weeks before trial. *See In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.) (considering parent's past illegal drug use); *see also* TEX. FAM. CODE § 263.307(b)(8); *Holley*, 544 S.W.2d at 371–72 (the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one). Because J.B. had been ordered to have clean drug tests as a condition of visitation with his children, his last contact before the June trial was in April. *See, e.g., In re L.F.B.*, No. 07-17-00080-CV, 2017 WL 3045829, at *1–2 (Tex. App.—Amarillo July 18, 2017, pet. denied) (mem. op.). The caseworker testified that L.L.B. expressed that she did not want any contact with her dad, "because of the abuse to her mother." *See In re A.O.G.*, No. 04-19-00630-CV, 2020 WL 908026, at *4 (Tex. App.—San Antonio Feb. 26, 2020, pet. denied) (mem. op.) (considering evidence that child had been exposed to violence); TEX. FAM. CODE § 263.307(b)(5); *Holley*, 544 S.W.2d at 371–72 (the desires of the child). The caseworker also testified that L.L.B. had stated she would "run away" if placed with either of her parents.

Meanwhile, the children's caregivers, their material grandparents, were ensuring that their needs were met. The caseworker testified, "Before the children actually entered into care, their actual educational levels were very low." *See* TEX. FAM. CODE § 263.307(b)(6). The caseworker also testified that "[n]ow that they are in a stable home, they are definitely performing very well." *Holley*, 544 S.W.2d at 371–72 (the stability of the home or proposed placement). The Department also presented evidence that the grandparents intend to adopt the children. *See In re A.L.B.*, No. 01-17-00547-CV, 2017 WL 6519969, at *7 (Tex. App.—Houston [1st Dist.] Dec. 21, 2017, no

pet.) (mem. op.); *see also* TEX. FAM. CODE § 263.307(a). And on January 29, 2021, they became licensed caregivers.

The caseworker testified that L.L.B. was "coming along great." She also testified that J.A.B. and J.A.B. had been struggling with reading, writing, and knowing numbers, but "that has improved tremendously since being stable in placement with the grandparents." TEX. FAM. CODE § 263.307(b)(6), (12)(F). The Department also presented evidence that B.B.L. had "completed her ECI" and "is excelling beyond her milestones." The caseworker testified that the children "expressed wanting to remain where they are at and do not want to leave the home of their grandparents." *See* TEX. FAM. CODE § 263.307(a); *Holley*, 544 S.W.2d at 371–72 (the desires of the child).

At trial, J.B. himself admitted "there was domestic violence" and the Department's actions were the "consequences." He also acknowledged that despite his struggle with drugs over the years, he had not reached out to the caseworker to engage in drug treatment. TEX. FAM. CODE § 263.307(b)(10), (11). He apologized for his aggressive emails and said he had abided by the no contact order. *Id*. He knew he was required to test clean to visit his children, and that he had not complied. *Holley*, 544 S.W.2d at 371–72 (the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one). He also stated he knew that placement with the grandparents was a better place for the children to be "for the moment." He said he missed some drug tests because of work but acknowledged some of them would have been "dirty." TEX. FAM. CODE § 263.307(b)(8).

On appeal, however, J.B. argues that he is able and willing to meet the children's physical and emotional needs and provide a safe and stable home. He is employed as a plumber, and he has stable housing. *Id.* § 263.307(b)(12), (A)-(D). The classes and therapy have helped him to think before he acts rather than the other way around. *Id.* § 263.307(b)(10), (11); *Holley*, 544 S.W.2d at

371–72 (the programs available to assist those individuals to promote the best interest of the child). He notes that the children's grandmother testified she would not allow him any contact with the children, even if he were doing well, and he believes that "is not considering the best interest of the children." According to J.B., the Department failed to carry its burden of clear and convincing evidence that termination is in the children's best interest. TEX. FAM. CODE § 161.001(b)(2).

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of J.B.'s parental rights was in the best interest of the children. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule J.B.'s arguments to the contrary.

*Application-A.L.*

Again, J.B. and A.L. came to the attention of the Department because of domestic violence. The Department presented evidence that the children had been living in a violent environment—one in which their parents regularly fought and drug use was ongoing—for years. TEX. FAM. CODE § 263.307(b)(7), (8); *Holley*, 544 S.W.2d at 371–72 (the emotional and physical danger to the child now and in the future). The Department presented evidence that at the time of removal, A.L. was transported to a mental health facility. At the time, A.L. stated that she was hearing voices and that she had been using methamphetamine and marijuana.

The caseworker testified that A.L.'s whereabouts were unknown during the summer of 2020, but that she finally found A.L. at a shelter in September of 2020. A.L. engaged in services and stabilized with medication. TEX. FAM. CODE § 263.307(b)(10), (11); *Holley*, 544 S.W.2d at 371–72 (the programs available to assist those individuals to promote the best interest of the child). She participated in visitation with the children. But when she left the shelter to live at a relative's home, she did not consistently engage with the services the Department offered. A.L. lacked a

personal phone, and the Department was not able to contact her from December 2020 until March of 2021. According to the caseworker, the children know who A.L. is, but they are "having trouble with the bonding, because, again, they see her and then they don't see her." *See In re J.A.M.*, No. 04-21-00146-CV, 2021 WL 4296044, at \*4 (Tex. App.—San Antonio Sept. 22, 2021, no pet.) (mem. op.) (considering parent's inconsistent visitation in best interest analysis); *see also* TEX. FAM. CODE § 263.307(b)(1), (12)(B).

When the trial commenced in June of 2021, A.L. had engaged in the services the Department offered but had not completed any of them. TEX. FAM. CODE § 263.307(b)(10), (11). At the time of trial, she was living at a shelter and unemployed. *Id.* § 263.307(b)(12)(B), (C), (D); *Holley*, 544 S.W.2d at 371–72 (the stability of the home or proposed placement).

The grandmother testified that when the children came to live with her in May 2020, they told her that J.B. and A.L. "used to fight almost every night, [and] dad was always aggressive with mom." *See* TEX. FAM. CODE § 263.307(b)(3), (7). She agreed with the Department's efforts at termination of her daughter's rights to the children because J.B. and A.L are "on and off. They go back together, off and on." They also "go back and forth" with doing drugs. "They go get on it; they get off it." She wants "to make sure that the kids are safe at all times." *Id.* § 263.307(a), (b)(1), (12); *Holley*, 544 S.W.2d at 371–72 (the plans for the child by these individuals or the agency seeking custody).

A.L. argues that she is a victim of domestic abuse and that she has made progress by staying away from J.B. since May 2020. Similarly, she argues that she was making progress with her service plan and "was able to get her mental health finally stabilized with the medications needed." *See* TEX. FAM. CODE § 263.307(b)(10), (11). She points out that the caseworker testified she does not presently have "concerns with the children and [A.L.]." According to A.L., she has complied with the housing and stability requirements, as she is currently in stable housing at the shelter, and

she is working to obtain a disability rating. *Id*. She is sober, seeing a psychiatrist, and taking her medications. *Id*.; *Holley*, 544 S.W.2d at 371–72 (the programs available to assist those individuals to promote the best interest of the child). However, A.L. herself acknowledged that at this point in her life, her parents are the more stable caregivers for the children.

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of A.L.'s parental rights was in the best interest of her children. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule A.L.'s arguments to the contrary.

#### CONCLUSION

We affirm the trial court's orders of termination.

Beth Watkins, Justice